IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

AMY WICKER, personal representative of the Estate of BRENT WICKER, deceased,

Plaintiff,

vs.

FORD MOTOR COMPANY and NEW HOLLAND NORTH AMERICA, INC.,

Defendants.

NO. CIV-04-308-T

ORDER

Before the court is defendants' motion [Doc. No. 25] for summary judgment. Pursuant to Federal Rule of Civil Procedure 56, defendants contend that the undisputed material facts entitle them to judgment as a matter of law on plaintiff's claims.

Summary judgment is proper where the undisputed material facts establish that a party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A material fact is one which may affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). To dispute a material fact, plaintiff must offer more than a "mere scintilla" of evidence; the evidence must be such that "a reasonable jury could return a verdict" for her. *Id.* The facts and reasonable inferences therefrom must be viewed in the light most favorable to plaintiff. Simms v. State of Oklahoma, 165 F3d 1321, 1326 (10th Cir. 1999).

If the undisputed facts establish that a plaintiff cannot prove an essential element of a cause of action, defendant is entitled to judgment on that cause of action. Celotex, 477 U.S. at 322. However,

defendant need not disprove plaintiff's claim; it must only point to "a lack of evidence" on an essential element. Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 671 (10th Cir. 1998). The burden then shifts to plaintiff to go beyond the pleadings and present facts, admissible in evidence, from which a rational trier of fact could find for her; she cannot rely on her allegations, her personal beliefs, or conclusory arguments, as the facts must be supported by affidavits, deposition transcripts, or specific exhibits incorporated therein. *Id.* at 671-72; *see also* Celotex, 477 U.S. at 324. It is not the court's responsibility to attempt to find evidence which could support plaintiff's position. *Id.* at 672.

In this case, the parties do not dispute that plaintiff's husband, Brent Wicker, was fatally injured on April 18, 2002 while operating a Ford 8N tractor manufactured by defendant Ford Motor Company ("Ford") in 1952 and sold to Wicker's grandfather in 1953. While Brent Wicker was attempting to use the tractor to remove a fence post from his rural property near Douglas, Oklahoma, the tractor flipped over. He was trapped underneath the tractor, which caught fire. Brent Wicker died approximately ten hours later, and the cause of death was thermal burns. The parties agree that the 8N tractor at issue was not equipped with a roll over protection system ("ROPS"), which the parties generally describe as including a roll over bar and a seat belt.

Plaintiff contends that defendants are liable for manufacturers products liability, alleging that the tractor was unreasonably dangerous. Specifically, she alleges that the tractor had a tendency to be unstable and flip over and that defendants failed to warn operators of that possibility. She also contends that defendants failed to adequately warn consumers that improper towing and pulling from the rear of the tractor was dangerous because doing so could cause the tractor to roll over. Further, she alleges, defendants failed to warn of the need for ROPS on the tractor, although defendants knew of the tendency of the tractor to

flip over. Finally, plaintiff contends, defendants failed to initiate a retrofit program or provide information regarding the availability of ROPS which could be installed on older tractors; she also alleges that defendants failed to provide post-sale warnings about the need for ROPS and the risks associated with "high hitching." In their motion, defendants argue that the evidence shows that plaintiff cannot prove the essential elements of a products liability claim on any of these bases.

The undisputed evidence before the court establishes that the accident occurred when Wicker hitched a chain to a point above the rear axle of the tractor, a practice called "high hitching[1]," and then attached the other end of the chain to the fence post he was trying to remove. When he accelerated, the tractor flipped over backward.

The undisputed evidence also establishes that roll over protection systems were not installed in Ford 8N tractors or any other tractors at the time the subject Ford 8N was manufactured in 1952. *See* Report of defendants' expert witness Joseph A. Abramczyk, P. E. ("Abramczyk report") defendants' Exhibit 21, page 3; Deposition of plaintiff's expert witness John Severt ("Severt dep."), defendants' Exhibit 24, p. 52, lines 15-17. Roll over protection for tractors was invented by John Deere Company and patented in 1969, and John Deere was the first company to begin publicizing the availability of same in the early 1970's. *Id.* Ford began publicizing the availability of ROPS for tractors in about 1975. Abramczyk Report, page 4. At least as early as 1981, Ford provided its dealers with the names and addresses of manufacturers and distributors of ROPS equipment which could be installed on older Ford tractors, including the 8N. *See* Ford

---

[1]*Although plaintiff's expert witness has questioned whether the chain was "high hitched," plaintiff has expressly argued that it was and has expressly argued that defendants' allegedly failed to warn of the dangers of that practice. Additionally, Mike Belcher, a Douglas Volunteer Fire Department member who was present at the accident scene, testified that he observed the chain hooked around a pin at the top link of the tractor's three-point hook up, a practice which he described as "extremely unsafe." Affidavit of Mike Belcher, defendants' Ex. 6, ¶¶ 3-4.*

General Sales Letter of September 22, 1981, defendants' Exhibit 25.

It is undisputed that Wicker's grandfather, Carl Wicker, purchased the 8N tractor new in 1953 and used it in his farming operations until he gave the tractor to Brent Wicker's father, Jack Wicker. Jack Wicker gave the tractor to Brent Wicker in 2002. At that time, the 8N tractor had not been used for approximately 10 years and was inoperable. Jack Wicker dep., defendants' Exhibit 20, page 66, lines 22-25; page 67, lines 2-4. Jack Wicker testified that Brent Wicker did a lot of "tinkering" with the tractor to get it running. *Id.*, p. 67, lines 11-12. On the day before the accident, the subject tractor was repaired at Covington Automotive; it was tuned, the carburetor was rebuilt, the fuel line was replaced, and spark plugs were replaced. Keith Bolz dep., defendants' Exhibit 28, p. 16, line 22 - p. 17, line 11; p. 19, lines 12-14; Covington Automotive invoice of April17, 2002, defendants' Exhibit 19. At the time the tractor was inspected by defendants' expert witness in 2004, there was evidence of past repairs as well as missing components, including but not limited to the components holding down the battery. Abramzcyk Report, defendants' Exhibit 21, p. 2, ¶¶ 3-4.

The evidence before the court establishes that the Owners' Manual for the Ford 8N ("Owners' Manual") contains an express warning regarding the proper technique for using the tractor to pull, and includes instructions regarding hitching to the tractor. The Owners' Manual contains the following warnings:

> As a general rule, the higher the hitch point the more weight is transferred from the front wheels to the rear wheels.
>
> **CAUTION: A tractor drawbar should be adjusted to have sufficient front end weight for steering and safety (sec. 129). Pull only from the draw bar. Pulling from the top link or the rear axle is definitely dangerous.**

Operators' Manual, § 128, p. 29, attached to defendants' brief as Exhibit 12 (Emphasis in original).

Section 129 of the Operators' Manual is entitled "Safety," and includes the following subsection:

> **e. Dangerous Conditions.** The following dangerous conditions should be carefully noted. By following the simple precautions given here, accidents can be avoided.
> ***
> (2) VERY HIGH HITCH. The tractor hitch is the part of the tractor designed for pulling. Pulling from the top link, or from the axle housing, can cause the front end of tractor to raise under ordinary loads. *Always hitch to the drawbar.*

Operators' Manual § 129.e (2), defendants' Exhibit 12, p. 33 (Emphasis in original). Another portion of the "Safety" section of the Operators' Manual is entitled "**f. Avoiding Accidents**;" among the instructions for operators to avoid accidents is the following: "(4) When pulling, use the drawbar." *Id.*

The evidence also shows that, when the 8N was manufactured in 1952, it bore certain decals containing safety or operation instructions. Included was a decal which stated:

BE CAREFUL
PULL ONLY FROM STANDARD DRAWBAR
OR DRAWBAR CLEVIS DO NOT HITCH TO
AXLE OR ANY POINT ABOVE

Ford Warning Decal, Defendants' Exhibit 11. Photographs of the subject tractor taken in May of 2004, approximately two years after the April 18, 2002 accident and more than 50 years after the tractor was purchased, do not show any decals. Defendants' Exhibits 1 and 2. Plaintiff does not offer evidence to dispute the fact that such decal would have been placed on the 8N tractor when it was manufactured in 1952. Although plaintiff contends that the subject tractor contained no such decal when it was purchased in 1953, her only support for that contention is Jack Wicker's testimony in his 2004 deposition that he did not remember seeing any decals when his father purchased the tractor in 1953 when Jack Wicker was about 14 years old. Jack Wicker dep., defendants' Exhibit 20, p. 38, lines 11-17; p. 47, lines 5-7. Neither he nor any other witness testified that the subject tractor never bore such decals.

It is not disputed that, in 1952, farmers were the anticipated purchasers and operators of the 8N tractor. Jack Wicker dep., defendants' Exhibit 20, p. 21, lines 5-7; deposition of plaintiff's expert witness J. B. Severt, P. E., defendants' Exhibit 24 ("Severt dep."), p. 51, lines 22-24. It is not disputed that Brent Wicker's grandfather, the original purchaser of the subject tractor, was a farmer. It is also undisputed that Brent Wicker was not a farmer by profession, and he did not conduct farming operations. He and plaintiff owned a John Deere riding mower tractor which he used to maintain the property on which the accident occurred and, according to plaintiff, Brent Wicker used the 8N tractor to clear the property and make it easier to mow with the riding lawnmower and avoid the need to use a weed eater. *See* Amy Wicker dep., defendants' Exhibit 5, p. 31, lines 20-23.

To recover on her claim of manufacturers' products liability under Oklahoma law, plaintiff must prove that 1) the tractor at issue was defective; 2) the defect rendered the tractor unreasonably dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it with the ordinary knowledge common to the community as to its characteristics; 3) the defect existed at the time the tractor left the possession and control of the manufacturer; and 4) the injury suffered was proximately caused by the defect. Woods v. Fruehauf Trailer Corp., 765 P. 2d 770, 773-74 (Okla. 1988); Lamke v. Futorian Corp., 709 P. 2d 684, 686 (Okla. 1985).

Plaintiff first contends that the 8N tractor was defective and unreasonably dangerous because it had a tendency to roll over when high hitched. A product is unreasonably dangerous if it is "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics". Smith v. U.S. Gypsum Co., 612 P. 2d 252, 253 (Okla. 1980), , *quoting* Kirkland v. General Motors Corporation, 521 P.2d 1353

(Okla.1974). Whether the tractor was defective because it could roll over when it was high hitched must, therefore, be evaluated by the objective ordinary consumer's expectations of its dangers as of the time it left the manufacturer's control. Ahrens v. Ford Motor Co., 340 F.3d 1142, 1146 (10th Cir. 2003); Kirkland ,521 P.2d at1362-63. For this purpose, an "ordinary consumer" is one who would be "foreseeably expected to purchase the product." Woods, 765 P. 2d at 774. The defect must have existed "at the time the product left the manufacturer's possession and control." *Id.* at 773.

In this case, it is undisputed that, when the 8N tractor was manufactured in 1952, the ordinary consumer expected to purchase it was a farmer. The undisputed evidence before the court, consisting of the deposition testimony of witnesses who are farmers or have experience in farming operations, shows that farmers and individuals working in the farming community know that farm equipment can be dangerous. *See, e.g.,* Marnita Rupp dep., defendants' Exhibit 6, page 37, line 7; page 38, line 6. Specifically, the risk of a roll over while operating a tractor is well known in the farming community, and such risks are the subject of safety programs and demonstrations conducted by the 4-H and others; in fact, children are taught about such dangers at an early age. *Id.,* p. 37, lines 7-23; Kory Rupp dep., defendants' Exhibit 15, page 20; page 21, lines 1-5.

The undisputed testimony of witnesses who are farmers or have worked on farms or operated tractors establishes that they know the risks of "high hitching." According to the undisputed testimony, it is important to hitch a chain or rope to the lowest point on the rear of the tractor; hitching to a point above the axle is dangerous because it creates a risk of a rollover. Kory Rupp dep., Ex. 15, page 33, lines 2-19; Keith Bolz dep., defendants' Ex. 18, p. 11, lines 7-25; p. 12, lines 1-3; Mark Bolz dep., defendants' Ex. 16, p. 33, lines 19-23; affidavit of Mike Belcher, defendants' Ex. 6, p. 2 ¶ 4; Marnita Rupp dep.,

defendants' Exhibit 13, p. 34, lines 7-20; page 37, lines 7-13. Farmers are taught "from day one" that you should not use the upper link of the tractor to pull because doing so risks the possibility of a rollover caused by the center of gravity being too high; an operator should always place a chain at the lowest point on the tractor to prevent a rollover. Kory Rupp dep., defendants' Ex. 15, p. 20, lines 19-25, p. 21, lines 1-5; p. 25, lines 13-22. To prevent a tractor from flipping over when using it to pull an object from the ground, the operator should hitch to the point below the axle where the draw bar is located. Mark Bolz dep., defendants' Exhibit 16, page 33, lines 19-23.

A products liability action can be based on the manufacturer's failure to adequately warn foreseeable consumers of the risks associated with a product. Holt v. Deere & Company, 24 F.3d 1289, 1292 (10th Cir. 1994). However, the manufacturer's duty is limited to a pre-sale duty to warn of latent defects and dangers. Duane v. Okla. Gas & Elec. Co., 833 P.2d 284 (Okla. 1992). However, that duty exists only if the manufacturer would not expect the product's users to discover the condition and realize the danger involved. *Id*. at 286. Where the danger is known or should be known by the consumer, the manufacturer does not have a duty to warn. Mayberry v. Akron Rubber Mach. Corp., 483 F.Supp. 407, 413 (N.D. Okla. 1979). Under Oklahoma law, a manufacturer has no duty to warn of open and obvious dangers. Ahrens, 340 F.3d at 1146.

The undisputed evidence before the court shows that, when the 8N tractor was manufactured in 1952, the anticipated consumer of the tractor was a farmer; the undisputed evidence further shows that the ordinary farmer would know that high hitching would likely cause the tractor to roll over and that such knowledge was common to anyone working around a farm. Plaintiff offers no facts to contradict this testimony. Instead, she argues that Brent Wicker was not the ordinary consumer of the 8N tractor because

farming was not his profession. Plaintiff further argues that Ford should have anticipated the possibility that individuals other than farmers would ultimately operate the 8N tractor and that such persons would not be aware of the risks of a roll over or high hitching.

The undisputed evidence establishes that Brent Wicker or others who might use the tractor 50 years after its manufacture were not, at the time of its manufacture, the anticipated consumers of the 8N tractor. That a product could be dangerous to the general public does not render it unreasonably dangerous in the context of a products liability action if it was not unreasonably dangerous to the ordinary consumer of the product. *See, e.g.,* Woods, 765 P. 2d at 774. Plaintiff has presented no persuasive authority, and the court has located none, that would support her contention that Oklahoma law imposes liability on this basis.

Plaintiff also argues that, although ROPS was not available for tractors in 1952 when the subject tractor was manufactured, the absence of same on the subject tractor rendered it defective because defendants should have foreseen the availability of ROPS as a means of preventing injury when the tractor flipped over. The only evidence she offers in this regard is the opinion of her expert witness that Ford should have contemplated the fact that roll over protection could have been utilized in 1952. *See* Severt dep., defendants' Ex. 24, p. 52, lines 10-25.

As defendants point out, however, the fact that a product could be made safer by adding a safety device is not, without more, enough to establish that the product is defective, as a manufacturer "does not have a legal duty to produce a product incorporating only features representing the ultimate in safety." Gates v. Ford Motor Co., 494 F.2d 458, 460 (10th Cir. 1974); *see also* Woods , 765 P. 2d at 774-75. The fact that a product could be made safer does not establish that, at the time of its manufacture, it was less safe

than would be expected by its anticipated consumer. Prince v. B.F. Ascher Co., Inc. 90 P.3d 1020, 1026, n. 5 (Okla. Civ. App. Div. 3, 2004), *citing* Woods,765 P.2d at 775.

Thus, even if the court accepted plaintiff's expert's testimony that a ROPS feature could reasonably have been anticipated approximately 17 years prior to the patent of such device by John Deere, Ford did not have a legal duty to incorporate the "ultimate in safety" in its 1952 design. Plaintiff cannot, as a matter of law, recover on this basis.

In the alternative, defendants argue that, even if there was a duty to warn of the risks of a roll over resulting from improper hitching, that duty was satisfied by the express warnings in the Operator's Manual and the decal on the 8N tractor. As noted above, the Operator's Manual contained express warnings about the dangers of improper hitching, instructions about proper methods for hitching, and instructions for avoid accidents. Defendants' Exhibit 12.

The court concludes that, according to the undisputed facts in the record, plaintiff cannot prove that the 8N tractor was not defective or unreasonably dangerous to its anticipated consumer at the time the tractor left the manufacturer. Neither was it rendered defective by a failure to warn of latent or hidden dangers. The evidence establishes that the risks of operating the tractor and "high hitching" were well-known by the anticipated consumers of the tractor. In any event, defendants included specific warnings about the risks of improper hitching and provided instructions designed to avoid that risk. Therefore, under Oklahoma law, plaintiff cannot recover on the basis of these contentions.

Plaintiff also argues, however, that defendants failed to initiate a retrofit program or provide information regarding the availability of ROPS which could be installed on older tractors; she also alleges that defendants failed to provide post-sale warnings about the need for ROPS and the risks associated with

"high hitching." As defendants point out, however, Oklahoma does not recognize a post-sale duty to warn or retrofit a product. *See* Lee v. Volkswagen of America, Inc., 688 P. 2d 1283, 1285 (Okla. 1984); Kirkland, 521 P. 2d at 1366. Plaintiff's reliance on McKee v. Moore, 648 P. 2d 21 (Okla. 1982) is misplaced, as that decision involved a pharmaceutical product inapplicable to these facts. Neither does Smith v. FMC Corp., 754 F.2d 873 (10th Cir. 1985) provide persuasive authority that Oklahoma recognizes a post-sale duty to warn. Neither decision cited by plaintiff has subsequently been applied to facts similar to those presented in this case; the court is not persuaded that Oklahoma recognizes a post-sale duty to warn.

As defendants point out, plaintiff offers no authority to support her contention that defendants had a legal duty to retrofit 50-year-old tractors to install ROPS or other features. In any event, plaintiff does not offer evidence to dispute that Ford provided information to its dealers about companies manufacturing or distributing ROPS equipment which could be installed on the 8N tractor. Defendants' Exhibit 25.

Furthermore, plaintiff fails to show that the absence of ROPS on the 1952 tractor was latent or hidden. In fact, both plaintiff and Brent Wicker knew that the tractor at issue did not have a roll bar or a seat belt. Amy Wicker dep., defendants' Ex. 5, p. 26, lines 14-19. The absence of a roll bar on the 8N tractor at issue in this case is obvious. *See* photographs of the subject tractor, submitted as defendants' Exhibits 1 and 2; *see also* Mark Bolz dep., defendants' Exhibit 16, lines 17-22; Keith Bolz dep., defendants' Ex. 18, p. 13, lines 3-6; Glenda Campbell dep., defendants' Ex. 4, p. 21, lines 15-20; Marnita Rupp dep., defendants' Ex. 13, p. 41, lines 18-23.

The undisputed evidence also shows that anyone with experience in operating tractors knows that roll bars are safer because, if the tractor flips over, the operator is less likely to be trapped or to be seriously

injured where a roll bar is in place; serious injury is likely if there is no roll bar. *See, e.g.,* Kory Rupp dep., defendants' Exhibit 15, p. 41, lines 19-24; Mark Bolz dep., defendants' Exhibit 16, p. 36, lines 6-18; Keith Bolz dep., defendants' Exhibit 18, p. 13, lines 13-15, p. 14, line 1; p. 18, lines 19-21.

The court concludes that plaintiff cannot establish the contention that, under Oklahoma law, defendants had a post-sale duty to warn about the risks of operating a tractor without ROPS or a post-sale duty to retrofit 50-year-old tractors with ROPS. Neither does the evidence support a claim that defendants failed to warn consumers of a hidden danger resulting from the lack of ROPS on the subject tractor, as the absence of same was neither hidden nor latent. As a matter of law, plaintiff cannot satisfy her burden in this regard.

Accordingly, the court concludes that plaintiff cannot, as a matter of law, establish the requisite elements of her manufacturers products liability claim on any of the bases she proposes. She has not presented sufficient evidence from which a reasonable jury could conclude that the tractor was defective or unreasonably dangerous under Oklahoma law.

Even if she had offered sufficient evidence to create a material factual dispute with respect to these allegations, she has failed to offer sufficient evidence from which a reasonable jury could conclude that the alleged defect in the 8N tractor caused Brent Wicker's death. The evidence shows that his death was caused by thermal burns, and plaintiff has not offered evidence that the absence of ROPS on the tractor caused the fire. In fact, her expert witness testified that the fire could still have occurred if the tractor had been equipped with a roll bar and seat belt. Severt dep., defendants' Exhibit 24, p. 88, lines 2-17. Plaintiff argues that defendants' expert witness was unable to determine the cause of the fire with certainty; however, it is not defendants' burden to disprove plaintiff's theory, but only to show that there is an absence of proof

to support plaintiff's claim. *See*

Adler,144 F.3d at 671. The record before the court shows that plaintiff has not met her burden of showing that the alleged defect in the tractor caused Brent Wicker's death.

Accordingly, plaintiff has failed to present sufficient evidence to establish the essential elements of her claims; defendants' motion for summary judgment [Doc. No. 25] is GRANTED. Judgment shall enter in favor of defendants and against the plaintiff on all claims asserted by plaintiff.

Having so ruled, the court need not address defendants' separate motion to exclude portions of expert testimony pursuant to Daubert [Doc. No. 27] or the motions in limine [Doc. Nos. 35, 36, 37, 38, 40, 41, 42, 43, 44, and 45], as all remaining pending motions are rendered moot by this ruling.

IT IS SO ORDERED this 1st day of July, 2005.

RALPH G. THOMPSON
UNITED STATES DISTRICT JUDGE